MAURER ET AL. *v.* FAULHABER, ADMINISTRATRIX, ET AL.

[No. 18,129. Filed June 8, 1951.]

*Nathan Mendenhall,* of Winchester; *Russell E. Wise,* of Union City; and *Moran & Abromson,* of Portland, for appellants.

*Ernest M. Dunn,* of Union City; *John D. Wilson,* of Winchester; *Robert L. Smith; Keith Fraser;* and *John A. Resler* (of counsel), all of Portland, for appellees.

CRUMPACKER, J.—As all questions involved in this litigation concern Clara K. Faulhaber in the various capacities in which she appears as an appellee, our use of the word "appellee" hereafter will be understood to refer to her and the context will indicate her capacity at the moment.

The appellee and one John L. Faulhaber were married on April 2, 1908. No offspring resulted from this union but the husband was the father of six children by a former marriage, four of whom are the appellants in this appeal. On October 1, 1946, the appellee was duly appointed guardian of her husband's estate

on the ground that he was old and infirm and therefore unable to look after the same properly. John L. Faulhaber died intestate on September 13, 1948, still under guardianship, and his widow, the appellee, was appointed administratrix of his estate. She qualified as such and in due course filed her final report to which the appellants filed exceptions. On the issues thus joined a trial was had, the exceptions were overruled and judgment entered approving the final report and adjudging the estate fully and finally administered. It appears that the appellants' principal objection to the final report, and the only one not waived in this appeal, concerns acts of the appellee as her husband's guardian and not as the administratrix of his estate. Despite the collateral nature of this attack all parties waived the same and the trial court determined the questions involved in the manner presented. We shall do likewise.

It appears that the appellants' case is built around the proposition that when a guardian engages in any transaction involving his ward's estate out of which he, the guardian, obtains personal benefit, the transaction is presumptively fraudulent even in the absence of corrupt intent or design and such benefits will inure to the ward's estate. 25 Am. Jur., Guardian and Ward, § 208, p. 130; 1 *Henry's Probate Law* (5th Edition), § 680, p. 989, and cases cited. The particular transaction upon which the appellants rely is the sale, by the appellee as guardian, of certain of her ward's real estate in Gary, Indiana, for an alleged consideration of $45,000 out of which she retained $15,000 for her own use and benefit. The appellants contend that this transaction was fraudulent in two respects: (1) The appellee, being a second childless wife, would inherit a life estate in an undivided one-third of her ward's real estate in the event he died intestate. By reducing said real estate

to personal property she enlarged her inheritance to an absolute one-third interest therein. (2) By retaining $15,000 of the purchase price she converted her inchoate one-third interest into immediate possession to her ward's detriment.

Both of these questions require an examination of the facts which may be summarized as follows: John L. Faulhaber and the appellee were married on April 2, 1908. In 1911 John bought some unimproved real estate in Gary, Indiana, and leased it to one Ben Silverman for 20 years with the privilege of renewals for like periods. Silverman erected a building on the property in which he conducted his business for many years. Under the terms of the lease Silverman was to pay all taxes and John undertook to keep the proposed building in suitable repair. The present lease expires in 1954.

It seems that in 1921 John L. Faulhaber and the appellee were living in Elwood, Indiana, in a house John owned and which he had an opportunity to sell for $5,000. He wanted to dispose of the property and move to the country. The appellee had no desire to live on a farm and refused to join in a deed for the Elwood house. This impasse was finally resolved by a written instrument, executed by John to the appellee and called a lease, whereby all rents derived from the Gary property were assigned and set over to the appellee during the term of her natural life. In consideration for this document the appellee joined in the sale of the Elwood house and they moved to the country. They had considerable difficulty with Silverman over taxes, rents, and repairs to the Gary property and in 1939 John bought the building from Silverman and in payment therefor executed his note, secured by a mortgage, which he eventually paid. The appellee contributed to such payment to the extent of $75.00 per

month for three years out of the rent money she received by virtue of her contract of 1921.

In the meantime John and the appellee had moved to Union City, Indiana, and by 1946 John's health had become poor and, although his mind remained sound and alert, he was physically weak and inactive by reason of a serious heart condition. It was deemed advisable to have a guardian appointed to transact his business and on October 1, 1946, the appellee was appointed in such capacity by the Randolph Circuit Court. She duly qualified and served until John's death on September 13, 1948.

About a year before John's death one Herman Moshinsky and his wife Mary offered to purchase the Gary property and after several months of negotiation, in which John took part and fully understood, terms were agreed upon by which the Moshinskys were to pay $30,000 cash for title to the real estate and improvements, subject to the Silverman lease, and the appellee was to receive $15,000 for the release of all her rights to the rent therefrom. As John's guardian the appellee thereupon petitioned the Randolph Circuit Court for authority to make the sale. Her petition, of which the Moshinsky contract was made a part, laid all the essential facts before the court including her claim to all the rents and profits of the real estate involved during her natural life. It further represented that the property was run down and that she was having continual trouble with the Silvermans and, by reason of her rental contract, her ward's estate was getting nothing out of the property and it would be to his best interests to sell it. When this petition was heard she appeared personally before the court with her ward, her attorney and the prospective purchasers. The ward understood the proceedings and sanctioned them in all particulars. There was no irregularity about the sale;

the property was appraised according to the law in the sum of $20,000 and the court determined judicially that the sale would be advantageous to the ward's estate. The appellee's report of sale showed that she had received $30,000 for her ward's interest in the property and $15,000 personally for the assignment of her rental contract to the purchaser. In due course this report and a deed in conformity therewith was approved.

In support of their first proposition, stated earlier in this opinion, the appellants contend that upon the above facts it was the court's duty to order the appellee's prospective life estate in an undivided one-third of the real estate transferred to the cash derived from its sale in order to prevent the appellee from profiting, through her acts as guardian, by the enlargement of her inchoate rights. That she concealed her status as a second childless wife from the court and thereby induced it to make an improper order. It is true that the appellee's petition to sell the real estate involved does not specifically allege that she is her ward's second childless wife but the evidence the court heard when it determined the petition is not before us and we cannot assume that she concealed the facts in that respect. The record discloses that during the trial of the present case the court said it did not realize that the effect of its order of sale, in the guardianship proceedings, was to enlarge the appellee's interest in her husband's estate. We do not consider that statement as necessarily meaning that the court did not have the facts concerning the appellee's marital status before it. That it would have made no difference had the court realized the situation, is indicated by the fact that it overruled the appellants' motion for a new trial in which the matter was specifically presented. We can find no actual bad faith in

the transaction nor do we believe constructive fraud appears as a matter of law.

The fact that the appellee's prospective inheritance was enlarged by the transaction was merely incidental and in no way affected her ward's interests. His ▮▮▮▮ estate could not be impaired in any manner by a change in the way it would be distributed by the laws of descent upon his death. Nor had the appellants any vested interest that gave them standing to complain. Constructive fraud, upon which the appellants rely, must be at the expense of the ward and not of his prospective heirs, who have no assurance that they will ever inherit anything. Certainly if the ward's best interest demanded the sale of the property in question, the court would not have been justified in refusing it because the appellee's prospective inheritance would thereby be enlarged. The court was not concerned, nor could it be, with the result of its action, taken in protection of the ward's interest, on the inheritance rights of either the appellee or the appellants. We grant that as a general rule the relation of guardian and ward "is so intimate, the dependence so complete, the influence so great, that transactions between the two parties or by the guardian alone through which the guardian obtains a benefit, entered into while the relation exists, are, in the highest sense, suspicious and presumptively fraudulent." 25 Am. Jur., Guardian and Ward, *supra*. However, the present transaction was scrutinized by the Randolph Circuit Court on three occasions: (1) When it considered the appellee's petition to sell; (2) When it tried the case at bar; and (3) when it overruled the appellants' motion for a new trial. It seems to us that the evidence amply justified the court in concluding that any presumptive fraud attending the transaction was conclusively overcome.

It is obvious that the appellants' second proposition is not well taken because it is not supported by the facts. The $15,000 retained by the appellee was no part of her ward's estate nor was it money that, in good conscience, should have inured to his benefit. It was the price she received for the sale of a contract belonging to her individually and in which her ward had no interest. She acquired such contract many years before her husband was placed under guardianship. At the time she sold it she was receiving approximately $230.00 per month under its terms. She was then 75 years of age and had a life expectancy of 6.27 years and on that basis the reasonable value of the contract was in excess of the $15,000 she received for its sale. The ward's real estate was appraised at $20,000 and sold for $30,000 all of which he got and had the use of until he died. This appeals to us as good business and we can find nothing in it which indicates that the appellee overreached her rights or took any advantage of her ward.

Judgment affirmed.

Martin, C. J., dissents.

NOTE.—Reported in 99 N. E. 2d 106.